UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

HOWARD A BAILEY, III,

   Plaintiff,

v.

ERIC JEZIERSKI, et al.,

   Defendants.

Case No. 3:23-CV-85 JD

## OPINION AND ORDER

Before the Court are two motions to dismiss the Amended Complaint. Defendants Daniel Byrd and Eric Jezierski (the "Officer Defendants") have filed a partial motion to dismiss. (DE 9.) Defendant Leslie Baker has filed a separate motion to dismiss seeking to dismiss all claims against her. (DE 14.) For the reasons stated below, the Court will grant in part the Officer Defendants' partial motion to dismiss and grant Ms. Baker's motion to dismiss.

**A.    Factual Background**

The allegations in the Amended Complaint are somewhat disjointed. However, in recounting them, the Court construes the complaint in the light most favorable to the non-moving party, Mr. Bailey, and accepts the well-pleaded factual allegations as true. *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017).

On January 2, 2021,[1] Gayle Shorosh[2] reported that her then husband, Howard Bailey, had a firearm pointed at her and was the aggressor in a domestic dispute. It is not alleged who this report was made to. Presumably, it was the Starke County Sheriff's office because, sometime after the report was made, two officers employed by the Sheriff's office, Daniel Byrd and Eric Jezierski, appeared at Howard Bailey's home. (DE 18 ¶ 10–12.)

A later narrative report by Officer Jezierski stated that he then interviewed Ms. Shorosh alone in the bedroom. But, according to the Amended Complaint, this report was a fabrication. It was actually Officer Byrd who went into the bedroom alone with Ms. Shorosh. While in that bedroom, Officer Byrd and Ms. Shorosh began to conspire on "how to ensure that [Mr. Bailey] would be charged falsely with a crime." (*Id.* ¶ 12.)

Why did Officer Byrd conspire with Ms. Shorosh to falsely charge Mr. Bailey with a crime and why did Officer Jezierski then fabricate his report? According to the Amended Complaint, it was because Officer Byrd desired an "intimate" relationship with Ms. Shorosh. In order to cover up this desired affair by his fellow officer, Officer Jezierski filed the false report stating that he was the one who interviewed Ms. Shorosh, not Officer Byrd. (*Id.* ¶¶ 13–14.)

The Amended Complaint then alleges that the Starke County Prosecutor, Leslie Baker, became involved. Ms. Shorosh was the hairdresser of Ms. Baker. According to the Amended Complaint, it was due to this relationship that Ms. Baker then filed charges against Mr. Bailey on

---

[1] The Amended Complaint appears to contain a typo, stating this incident occurred on "January 2, 2022." (DE 18 ¶ 10.) However, every other date that follows is in 2021. The Court therefore interprets these events as happening in 2021.

[2] Some earlier filings and the Amended Complaint refer to Ms. Shorosh as "Gayle Bailey." (Amended Complaint, DE 18 ¶ 8.) However, later filings from Ms. Shorosh represent the name "Gayle Bailey" was incorrect and that she had changed it to "Gayle Shorosh." (DE 32.) Accordingly, the Court uses that name to identify her.

January 4, 2021, including charges for domestic battery, intimidation, and Class A Misdemeanors. (*Id.* ¶ 15.)

On January 2, 2023, Mr. Bailey filed a complaint, which was later amended. The Amended Complaint brought four causes of action:

| | | |
|---|---|---|
| **Count I:** | Official Misconduct (against Officer Jezierski, Officer Byrd, Ms. Baker, and Ms. Shorosh) |
| **Count II:** | Conspiracy (against Officer Jezierski, Officer Byrd, Ms. Baker, and Ms. Shorosh) |
| **Count III:** | False Arrest and Imprisonment (against Officer Jezierski, Officer Byrd, Ms. Baker) |
| **Count IV:** | False Informing (against Gayle Shorosh) |

(DE 18.) Two sets of Defendants have filed motions to dismiss. Officers Daniel Byrd and Eric Jezierski (the "Officer Defendants") filed a partial motion to dismiss, seeking to dismiss the Amended Complaint to the extent it is based on Indiana state law. (DE 9.) Prosecutor Baker has moved to dismiss the entire Amended Complaint, asserting the claims are barred by her prosecutorial immunity. (DE 14.)

**B.  Legal Standard**

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the well-pleaded factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Calderon-Ramirez*, 877 F.3d at 275. A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need only be plausible, not

3

probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

**C.     Discussion**

Two sets of Defendants have filed motions to dismiss.[3] The Officer Defendants have filed a motion to dismiss based primarily on the Indiana Tort Claims Act ("ITCA"), while Ms. Baker has filed a motion to dismiss based primarily on prosecutorial immunity. The Court will address each motion in turn. However, before doing so, it addresses an issue that arises in both motions to dismiss: whether the Indiana constitution serves as an independent basis to bring state law claims.

*(1) Indiana Constitution as basis for state law claims*

In his Amended Complaint, Mr. Bailey asserts that the action arises under "Article 1, Section 11 of the Indiana Constitution, as well as 42 U.S.C. § 1983 . . . ." (DE 18 ¶ 2.) Mr. Bailey also asserts that he is seeking "damages under Indiana Constitutional law and common law." (*Id.* ¶ 4.)

However, the Indiana Constitution does not support private rights of action. "Indiana and federal courts have consistently declined to find an implied right of action for damages under the Indiana constitution." *Caldwell v. Malave*, No. 2:19 CV 116, 2020 WL 887742, at *3 (N.D. Ind.

---

[3] The Court notes that Ms. Shorosh filed a motion to dismiss on May 1, 2023. (DE 32.) The Court will consider this motion to dismiss in a later order.

Feb. 21, 2020). In *Caldwell*, the Court declined to recognize an implied cause of action under Article 1, Section 11 of the Indiana state constitution. *Id.* at *3–4. Given the long line of precedent supporting that holding, the Court holds the same here. *See, e.g.*, *City of Indianapolis v. Cox*, 20 N.E.3d 201, 212 (Ind. Ct. App. 2014) ("[N]o Indiana court has explicitly recognized a private right of action for monetary damages under the Indiana Constitution.") (quoting *Smith v. Ind. Dep't of Corr.*, 871 N.E.2d 975, 985 (Ind. Ct. App. 2007)); *Hoagland vs. Franklin Township Community School Corp.*, 10 N.E.3d 1034, 1040 (Ind. Ct. App. 2014) ("[T]here is no express or implied right of action for monetary damages under the Indiana Constitution"); *Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014) (noting that Indiana has yet to recognize a civil remedy for violations of the Indiana Constitution); *Higdon v. Town of Lakeville*, No. 3:15-CV-234-RLM-CAN, 2015 WL 5353266 (N.D. Ind. Sept. 14, 2015) (collecting cases); *Williams v. Sch. Town of Munster*, No. 2:12-CV-225-APR, 2014 WL 1794565, at *8 (N.D. Ind. May 6, 2014) (the Indiana Constitution does not provide an implied right to sue for damages under Article I, § 11); *Ferris v. Williams*, No. 1:11-CV-836-TWP-MJD, 2012 WL 6201074, at *6 (S.D. Ind. Dec. 12, 2012) (same).

Accordingly, to the extent that Mr. Bailey's state law claims stem from the Indiana Constitution, they are dismissed.

### (2) The Officer Defendants' Motion to Dismiss

Whether the ITCA imparts immunity is a question of law for the court to decide. *Schon v. Frantz*, 156 N.E.3d 692, 699 (Ind Ct. App. 2020). "A lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally." Ind. Code § 34-13-3-5(b). Therefore, the ITCA immunizes individual government employees from personal liability for tortious acts occurring within the scope of

5

their employment. Ind. Code § 34-13-3-5(b). "The purpose of immunity is to ensure that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment." *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 452 (Ind. 2000) (quoting *Ind. Dep't of Corr. v. Stagg*, 556 N.E.2d 1338, 1343 (Ind. Ct. App. 1990)).

Unless a complaint alleges, on its face, that the actions occurred within the scope of employment, it is proper to bring the defense of immunity under § 34-13-3-5(b) at summary judgment, after post-complaint discovery. The Indiana Supreme Court, in *Bushong v. Williamson*, described the procedure for raising an immunity defense under § 34-13-3-5(b) where a complaint is silent:

> [34-13-3-5(b)] is simply silent and does not speak to what happens when no 'scope of employment' allegation is made in the complaint. In that event, the government employee is in the same position as any other defendant in a lawsuit where an allegation is made that the defendant's tortious or negligent conduct cause the plaintiff's injury. The difference is that a government employee defendant has a complete defense: the action occurred within the scope of employment. *If post-complaint discovery supports this claim, then it is appropriate that the defendant file a motion for summary judgment.*

790 N.E.2d 467, 472, 472 n.4 (Ind. 2003) (emphasis added) (also explaining that "if the complaint *alleges* that a government employee acted within the scope of employment, then a motion to dismiss under Trial Rule 12(B)(6) would be the appropriate course of action"); *see also Barnhouse v. City of Muncie*, 499 F. Supp. 3d 578, 601 (S.D. Ind. 2020) (finding that immunity applied where claims were brought against "individual defendants" and the complaint alleged, on its face, that the actions were undertaken within the scope of their employment).

The Officer Defendants argue that the Amended Complaint alleges, on its face, that the Officer Defendants were "acting within the scope of their employment," pointing to the allegation that the Officer Defendants were "acting under color of state law." (DE 10 at 6; 18 ¶¶

6

6–7.) But acting under "color of law" does not mean the same thing as "acting within the scope of their employment." *See Graham v. Sauk Prairie Police Comm'n*, 915 F.2d 1085, 1093 (7th Cir. 1990) (explaining that because "the 'under color of law' category is broader than the 'scope of employment category" an allegation that an employee was "acting under color of law" does not "automatically establish that the employee acted within the 'scope of employment' under the Wisconsin indemnity statute."); *see also Smetzer v. Newton*, No. 1:10-CV-93-JVB, 2010 WL 3219135, at *9 n.3 (N.D. Ind. Aug. 13, 2010) (applying *Graham* to Indiana's indemnity statute in Indiana Code § 34–13–3–5(b)). Accordingly, the mere allegation that the Officer Defendants were acting under color of law does not establish that they were acting within the scope of their employment.

The other allegations, interpreted in the light most favorable to the non-moving party, also do not show that the Officer Defendants were acting within the scope of their employment. "[C]onduct is within the scope of employment when it is of the same general nature as that authorized, or incidental to the conduct authorized." *Walgreen Co. v. Hinchy*, 21 N.E.3d 99, 107 (Ind. Ct. App. 2014). An act "is incidental to authorized conduct when it 'is subordinate to or pertinent to an act which the servant is employed to perform,' or when it is done 'to an appreciable extent, to further his employer's business.'" *Bushong*, 790 N.E.2d at 473 (quoting *Celebration Fireworks, Inc.*, 727 N.E.2d at 453).

Some of the alleged actions by the Defendant Officers appear to have been within the scope of their employment. For example, the officers are alleged to have responded to the report by Ms. Shorosh by going to Mr. Bailey's home. Responding to such reports is a task for which the Officer Defendants were almost certainly employed. However, other alleged actions, such as Officer Byrd "discuss[ing] with [Ms. Shorosh] how to ensure that plaintiff would be charged

7

falsely with a crime" and Officer Jezierski "fil[ing] a false narrative report" stating that he was the one who interviewed Ms. Shorosh "alone in the bedroom," may have been outside of the scope of employment. Deciding such a question is usually a question of fact and is not typically decided at the motion to dismiss stage. *Bushong*, 790 N.E.2d at 473 (explaining that whether a person's acts are within the scope of his or her employment is usually a question of fact, although it can be determined as a matter of law in certain circumstances).

Refraining from deciding such a question is especially appropriate here, given that Mr. Bailey includes several allegations that the Officer Defendants' conduct was criminal. *Burton v. Lacy*, No. 1:07CV0918 JDTTAB, 2008 WL 187552, at *3 (S.D. Ind. Jan. 18, 2008) (explaining that it was "not appropriate for the court to make" the determination of whether defendant's "conduct was within the scope of his employment" where the complaint alleged that the conduct "was willful and wanton as well as malicious."). For example, Count I alleges in multiple paragraphs that the Officer Defendants "committed the offense of False Informing." (DE 18 ¶¶ 21–22.) False informing is a criminal offense where a defendant "[gives] false information in the official investigation of the commission of a crime, knowing the report or the information to be false." Ind. Code § 35–44.1–2–3(d)(1). Count I also is entitled "Official Misconduct." Including this as a separate count is somewhat inartful, given that Official Misconduct is a criminal act, not a separate tort. *See* Ind. Code § 35-44.1-1-1 ("A public servant who knowingly or intentionally . . . commits an offense in the performance of the public servant's official duties . . . commits official misconduct."). Despite the inartful pleading, it is clear that Mr. Bailey is alleging that the Officer Defendants' actions constituted crimes, which led to his damages. (Amended Complaint, DE 18 ¶ 24 ("As a direct and proximate result of these acts of official misconduct [meaning, intentionally false informing while on duty], Plaintiff has suffered damages[.]").

While allegations that an officer engaged in criminal, intentional, or malicious conduct "do not automatically take" a defendant's "conduct outside the scope of employment . . . they do 'suggest . . . that the question may not be so black and white.'" *Smetzer*, No. 1:10-CV-93-JVB, 2010 WL 3219135, at *8. Given that Mr. Bailey's Amended Complaint includes multiple allegations that the damages were caused by criminal conduct, this weighs in favor of waiting until the record is more fully developed to decide whether this conduct was within the scope of employment.

Accordingly, because Mr. Bailey's Amended Complaint does not allege, on its face, that the defendants were acting within the scope of their employment, and that there are multiple allegations that the Defendant Officers committed crimes which led to his injuries, the Court finds that Indiana Code § 34-13-3-5(b) does not support dismissal on the basis of immunity at this stage in the proceedings. As detailed above, this defense may be raised at summary judgment, when the facts are more fully developed.

The Officer Defendants also briefly argue in their reply that Mr. Bailey fails to meet the statutory pleading requirements. Under Indiana Code § 34-13-3-5(c), if a lawsuit is "filed against an employee personally," the plaintiff must allege that "an act or omission of the employee that causes the loss is: (1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; *or* (5) calculated to benefit the employee personally." Ind. Code § 34-13-3-5(c) (emphasis added). As describe above, Mr. Bailey's Amended Complaint does, in fact, allege that the loss was caused by criminal conduct. Accordingly, the Court finds that the Amended Complaint complies with Indiana Code § 34-13-3-5(c).

Contrary to the explicit language of the statute in Indiana Code § 34-13-3-5(c), the Officer Defendants argue that, under Indiana Code § 34-13-3-5(b), Mr. Bailey had to

"specifically allege in the complaint that the employee was acting clearly outside the scope of the employee's employment and provide a reasonable factual basis to support the allegation." (DE 29 at 5–6 (quoting *Miner v. Sw. Sch. Corp.*, 755 N.E.2d 1110, 1115 (Ind. Ct. App. 2001)). The Officer Defendants' position, relying on *Miner*, 755 N.E.2d at 1115, is incorrect and misguided. At the time of *Miner*, § 34-13-3-5(b) contained the subsection that is now codified in § 34-13-3-5(c). In line with now § 34-13-3-5(c), the court in *Miner* recognized that a plaintiff, in their complaint, "must allege that an act or omission of the employee that causes the loss is: (1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; *or* (5) calculated to benefit the employee personally." *Id*. (emphasis added).

Furthermore, when placed in context, it is clear that the quote the Officer Defendants include is far less sweeping than they represent. In *Miner*, the plaintiff argued that she had raised a genuine issue of material fact regarding whether the defendant was acting within the scope of his employment. The court first noted that, under then § 34-13-3-5(b), the plaintiff failed to make such an allegation in her complaint and instead "pursued an individual claim against Miller on the basis that he had acted willfully and wantonly," which was alleged "eight separate times." This was sufficient for the claims based on willful and wanton conduct to continue. As opposed to the allegations regarding willful and wanton conduct, the plaintiff never alleged that the defendant "acted clearly outside the scope of his employment."

Because the *Miner* court allowed the willful and wanton claims to continue,[4] and found that those allegations were sufficient, it is apparent the court was *not* saying that a plaintiff suing

---

[4] The court ultimately dismissed the claims for willful and wanton conduct because the plaintiff "failed to present evidence creating a genuine issue of material fact on this issue." *Miner v. Sw. Sch. Corp.*, 755 N.E.2d 1110, 1114 (Ind. Ct. App. 2001). However, the court did not dismiss the claim for willful and wanton misconduct because of issues with the pleadings.

10

a government employee must always specifically allege that the employee acted outside the scope of the employee's employment. Such a holding would clearly go against the text of § 34-13-3-5(c). Rather, the court was noting that if a plaintiff was seeking to bring a claim against an employee solely premised on the employee having acted outside of the scope of their employment, the complaint had to include this as an allegation. But if a plaintiff alleged that a defendant caused the harm by acting willfully or wantonly, criminally, maliciously, or in a manner that benefitted the employee personally, then this would also be sufficiently pled, in line with the statute's text.

The Officer Defendants raise no other arguments outside of immunity and the pleading requirements. Accordingly, the Court denies their motion to dismiss as to the state law claims to the extent they do not arise from the Indiana constitution.

### (3) Prosecutor Baker's Motion to Dismiss

Ms. Baker argues that each of Mr. Bailey's claims against her are barred by prosecutorial immunity. Prosecutorial immunity is a recognized doctrine under federal law, as well as Indiana law, but the scope of the immunity differs.

Under federal law, "[a] prosecutor is absolutely immune from suit for all actions and decisions undertaken in furtherance of his prosecutorial duties." *Fields v. Wharrie*, 672 F.3d 505, 510 (7th Cir. 2012) (citing *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976)). Whether an action is within the scope of his prosecutorial duties depends on the action's function. *Van de Kamp v. Goldstein*, 555 U.S. 335, 342–43 (2009). "The analysis hinges on whether the prosecutor is, at the time, acting as an officer of the court, as well as on his action's relatedness to the judicial phase of the criminal process." *Fields*, 672 F.3d at 510. Absolute immunity extends not only to a prosecutor's decision to indict, but also "encompasses any action relevant to a prosecutor's

11

ability to conduct a trial," such as evaluating evidence and interviewing witnesses in preparation for trial. *Id.* at 510–11. However, absolute prosecutorial immunity under federal law does not extend to investigatory actions, where the prosecutor is "searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

Indiana law has broader prosecutorial immunity. Under the ITCA, "an employee acting within the scope of the employee's employment is not liable if a loss results from the . . . initiation of a judicial or an administrative proceeding." Ind. Code § 34-13-3-3(6). Indiana Courts have found that, under the ITCA and Indiana state common law, prosecutors have broad immunity, beyond that afforded under federal law. While federal law provides absolute immunity in regard to the evaluation of evidence by prosecutors, the charging decision, and presentation of evidence, "Indiana law is more generous to the prosecutor because it has rejected the Supreme Court's distinction between prosecutorial and administrative or *investigative* functions for purposes of immunity, as long as the prosecutor is acting within the scope of his or her authority." *Davis v. Zirkelbach*, 149 F.3d 614, 618 (7th Cir. 1998) (emphasis added).

Here, the actions of Ms. Baker are protected by absolute prosecutorial immunity under both federal and Indiana law. Mr. Bailey alleges Ms. Baker "authorized the filing of charges against" Mr. Bailey and initiated a "false criminal prosecution" against him. (DE 18 ¶¶ 15, 27.) The Amended Complaint does briefly allege that Ms. Baker "was acting in furtherance of her own personal interests as a result of her pre-existing personal relationship with GAYLE [SHOROSH]" when she initiated the charges. (*Id.* ¶ 27.) However, bringing criminal charges against an individual is protected by both federal and state prosecutorial immunity, even if brought for malicious or improper purposes. *Livingston v. Consolidated City of Indianapolis*, 398

N.E. 2d 1302 (Ind. Ct. App. 1979) ("The public welfare requires that [the] choice (whether or not to institute proceedings) shall be free of all fear of personal liability. To assure this freedom of action it is deemed best to make that assurance positive and definite by securing [a prosecutor] against *even actions based upon a malicious abuse of his official power*." (emphasis added)); *Henry v. Farmer City Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986) (explaining that a state prosecutor enjoys "absolute immunity from civil suit under § 1983 for damages in initiating a prosecution and in presenting the State's case' [and that] this immunity shields the prosecutor even if he initiates charges *maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence*." (emphasis added)).

The Court notes that Mr. Bailey argues in his response that Ms. Baker would not be entitled to prosecutorial immunity if "she counseled her law enforcement co-defendants on drafting the Probable Cause affidavit, spoke with Gayle Shorosh about the underlying facts, or conducted other acts of investigation or administration." (DE 24-1 at 3.) But Mr. Bailey's Amended Complaint does not allege that Ms. Baker did any of these things.[5] The sole action which Mr. Bailey alleges that Ms. Baker took was authorizing the filing of charges against him. As described above, this decision is within the core of what is protected by prosecutorial immunity, under both federal and Indiana state law.

---

[5] The Court notes that Mr. Bailey submitted an affidavit from himself in response to Ms. Baker's motion to dismiss. (DE 24-2.) In this affidavit, Mr. Bailey includes the conclusory statement that Ms. Baker "overstepped her duties as a 'prosecutor' and assisted [Ms. Shorosh], in an investigative fashion, to manufacture and manipulate a false charge of domestic battery[.]" (DE 24-2 ¶ 10.) This type of conclusory, threadbare recital of a legal conclusion need not be accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The rest of the affidavit does not support that Ms. Baker engaged in actions causing him damage outside of authorizing the charges. Rather, the affidavit opines on the purported friendship of Ms. Baker and Mr. Bailey's ex-wife, Ms. Shorosh. While this may relate to Ms. Baker's motive for bringing charges, motive does not alter the prosecutorial immunity analysis.

Accordingly, the Court finds that Ms. Baker's absolute prosecutorial immunity protects her from the state and federal claims brought against her. Such claims must be dismissed.

**D.     Conclusion**

The Court GRANTS Ms. Baker's motion to dismiss. (DE 14.) The claims against her are dismissed with prejudice in their entirety. The Court also DENIES as moot Ms. Baker's motion to strike Mr. Bailey's affidavit. (DE 30.) However, the Courts GRANTS in part and DENIES in part the Officer Defendants' partial motion to dismiss. (DE 9.) To the extent the Officer Defendants' claims are based in the Indiana Constitution, they are dismissed with prejudice. However, to the extent the claims are based on federal law and another source of Indiana state law, such as Indiana common law, the claims remain against the Officer Defendants.

SO ORDERED.

ENTERED: June 26, 2023

                                                /s/ JON E. DEGUILIO
                                                Chief Judge
                                                United States District Court